UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD COLE,

                        Plaintiff,

v.                                          **DECISION AND ORDER**
                                                07-CV-388S

TRUELOGIC FINANCIAL CORP.,

                        Defendant.

## I. INTRODUCTION

On June 15, 2007, Plaintiff Richard Cole commenced this action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in connection with Defendant Truelogic Financial Corporation's efforts to collect payment for a Target-RNB debt. (Docket No. 1). Defendant failed to plead or otherwise respond to this action. Consequently, the Clerk of the Court filed an Entry of Default as to Defendant on October 26, 2007. (Docket No. 4).

Presently before this Court is Plaintiff's Motion for Default Judgment and Motion for Damages and Attorney's Fees and Costs. (Docket No. 5). For the reasons stated below, Plaintiff's motion is granted, and Plaintiff is entitled to judgment in the amount of $4,165.

## II. BACKGROUND

Sometime in 1996, an individual, other than Plaintiff, incurred and defaulted on a debt to Target-RNB, located in Minneapolis, Minnesota. (Docket No. 10-4, Cole Affidavit, ¶ 3). After the individual defaulted on the debt, Target-RNB employed Defendant to attempt to collect the debt. (Cole Affidavit, ¶ 5). On or about May 22, 2007, an individual from Defendant's office, called and spoke to Plaintiff by telephone. (Cole Affidavit, ¶ 6).

Plaintiff informed the individual that the debt did not belong to him and that he refused to pay it. (Cole Affidavit, ¶ 6). Whereupon, the individual stated to Plaintiff that he could legally, and would put, the debt on Plaintiff's credit report. (Cole Affidavit, ¶ 6). Concerned that his credit report would be "tarnished," Plaintiff alleges that he suffered "emotional distress, upset, embarrassment, and humiliation." (Cole Affidavit, ¶ 8).

## III.  DISCUSSION

### A.  Entry of Default Judgment against Defendant

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. FED. R. CIV. P. 55(a). Once default has been entered, the allegations of the Complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

Prior to entering default judgment, the court must determine whether the facts alleged in the Complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of default judgment. FED. R. CIV. P. 55(b)(2).

### B.  Statutory Violations

The FDCPA protects consumers from unfair business practices. Specifically, under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Accepting Plaintiff's allegations as true, Defendant violated the FDCPA by falsely representing that Defendant could legally, and would cause, the debt to be placed on Plaintiff's credit report. See 15 U.S.C. § 1692e(5) (threat to take any action that cannot legally be taken or that is not intended to be taken); see also 15 U.S.C. §1681c (adverse credit information is excluded from consumer credit reports if it is over seven years old).

Accordingly, this Court will proceed to a determination on the amount of damages under the FDCPA.

**C.   Calculation of Damages**

    **1.   Damages Under the FDCPA**

Section 1962k of the FDCPA provides for three types of recovery: (1) statutory damages, often referred to as "additional damages"[1]; (2) actual damages; and (3) reasonable attorney's fees, costs, and expenses. See 15 U.S.C. § 1692k(a). In this case, Plaintiff does not seek actual damages,[2] but asks for $1,000 in statutory damages, and $3,665 in attorney's fees and costs.

        ***a.   Statutory Damages***

Under the statute, "[] any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of [] such additional damages as the court may allow, but not exceeding $1,000." 15

---

[1] See Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27-28 (2d Cir. 1989).

[2] Although Plaintiff's complaint alleges both actual *and* statutory damages, (Compl. ¶ 19, Docket No. 1), in Plaintiff's subsequent submission on the issue of damages, fees, and costs, Plaintiff submits that he is only entitled to statutory damages. (Docket No. 10, p. 3). Furthermore, even if Plaintiff were to argue that he is entitled to actual damages, Plaintiff has not provided any proof on the issue of actual damages. See Cali v. Gordon, 96-CV-982, 1996 WL 33104209 (E.D.N.Y Aug. 16, 1996) (plaintiff not entitled to actual damages because the plaintiff has not established any injury flowing from the violation). Therefore, Plaintiff can seek only additional, or statutory, damages in this case.

U.S.C. §1692k(a)(2)(A). The maximum amount of statutory damages under the FDCPA is $1,000 per action or proceeding, not per statutory violation. Sibersky v. Borah, Goldstein, Altschuler & Schwartz, 242 F.Supp.2d 273, 277 (S.D.N.Y. 2002). Accordingly, Plaintiff is able to collect a maximum of $1,000 as damages.

Next, this Court must determine the appropriate award within the $1,000 statutory range. Congress has given the district courts "ample discretion" in assessing damages for violations of the FDCPA. Pipiles, 886 F.2d at 27. When determining the appropriate amount of liability in an individual action, courts must consider "the frequency and persistence of such noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. §1692k(b)(1). A plaintiff "does not have a burden to establish scienter under the FDCPA." Neild v. Wolpoff & Abramson, L.L.P., 453 F.Supp.2d 918, 924 (E.D.Va. 2006); see also 15 U.S.C. § 1962k(c) (explaining that to avoid liability under the Act, the defendant may show that a violation was not intentional).

In this case, Defendant made one (1) phone call to Plaintiff wherein Defendant inquired about a debt owed to Target-RNB. This Court finds that a single phone call is not "frequent" or "persistent." However, so far as this Court can tell, Defendant's individual statement was intentional. This finding is corroborated by Defendant's failure to show that his statement was not intentional. See § 1962k(c). Therefore, this Court finds that $500 is sufficient to compensate Plaintiff for the violation. See Fontana v. C. Barry & Associates, LLC, 06-CV-359, 2007 WL 2580490, at *2 (W.D.N.Y. Sep. 4, 2007) (Arcara, J.) (finding an award of $250 sufficiently

4

compensated the plaintiff when the Court found that the violation was not frequent, not persistent, and not intentional).

Plaintiff's argument that he is entitled to the maximum statutory amount due to inflation is misplaced.  Plaintiff argues that he is entitled to the statutory maximum of $1,000 because the FDCPA was first enacted in 1978 and in today's dollars, this would be worth $3,322.58. (Docket No. 10, p. 2).  In support, Plaintiff cites to cases that do not stand for the proposition he alleges. Id.  This Court is constrained by the statute, and has no authority to disregard the factors in §1962k(b)(1) due to inflation.  Accordingly, Plaintiff is entitled to $500 in statutory damages.

### b. *Attorney's Fees & Costs*

The FDCPA provides that "in the case of any successful action to enforce the foregoing liability, [the defendant is liable for] the costs of the action, together with a reasonable attorney's fee as determined by the court."15 U.S.C. §1692k(a)(3).  Even if a court finds that actual or statutory damages are not warranted, "[b]ecause the FDCPA was violated, however, the statute *requires* the award of costs and a reasonable attorney's fee []." Pipiles, 886 F.2d at 28 (citing Emanuel v. American Credit Exch., 870 F.2d 805, 809 (2d Cir. 1989)) (emphasis added).[3]

In order to determine the reasonableness of attorney's fees, courts typically take a

---

[3] This Court acknowledges that the Fifth Circuit and the Seventh Circuit approach the award of costs and attorney's fees differently than the Second Circuit.  For example, the Fifth Circuit declines to award costs and attorney's fees when the plaintiff is unable to prevail on his claim for actual and additional damages. Johnson v. Eaton, 80 F.3d 148, 151 (5th Cir. 1996).  The Fifth Circuit reasoned that the Second Circuit's approach "takes the language of the statute out of context and fails to give meaning to the limiting phrase 'to enforce the foregoing liability.'" Id.  However, this Court awards Plaintiff $500, therefore, Plaintiff is successful and moreover, this Court is bound to follow the precedent of the Second Circuit.

two-step approach. First, courts apply the lodestar method. <u>Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.</u>, 212 F.R.D. 94, 103 (E.D.N.Y. 2002). Second, courts assess the proportionality of the attorney's fees in relation to the damage awards. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433-437, 103 S.Ct. 1933, 1939-41, 76 L.Ed.2d 40 (1983); <u>Teng v. Metropolitan Retail Recovery Inc.</u>, 851 F.Supp. 61, 70-71 (E.D.N.Y. 1994); <u>Baruch v. Healthcare Receivable Mgmt., Inc.</u>, 05-CV-5392, 2007 WL 3232090, at *6 (E.D.N.Y. Oct. 30, 2007).

The lodestar figure is calculated by "multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for each attorney or paralegal involved." <u>Kapoor v. Rosenthal</u>, 269 F.Supp.2d 408, 412 (S.D.N.Y. 2003) (citation omitted). "The lodestar figure should be in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." <u>Luciano v. Olsten Corp.</u>, 109 F.3d 111, 115 (2d Cir. 1997) (citation and internal quotations omitted).

In this case, Plaintiff's attorney has documented 15.4 billable hours on this case and seeks compensation at an hourly rate of $200 per hour, which amounts to a total of $3,080.00 in attorney's fees. (Docket No. 10-2, Jordan Affidavit, ¶¶ 9 & 11). This Court notes that $200 per hour has previously been found by this Court to be a reasonable rate for counsel's services. <u>McCarty v. Capital Mgmt. Servs., Inc.</u>, 05-CV-505S, Docket No. 20 (W.D.N.Y. July 17, 2006). Accordingly, this Court finds that Plaintiff's attorney's fees are reasonable under the lodestar principles.

Second, in determining the appropriate amount of the attorney's fee award, courts must consider the proportionality of the fee award to the damage award. "A strong

presumption exists that the lodestar figure represents a reasonable fee." Kapoor, 269 F.Supp.2d at 412. Courts must consider, *inter alia*, "the degree of success obtained by the prevailing party; if the plaintiff has only partial or limited success, a reduction in the award of attorney's fees may be appropriate." Teng, 851 F.Supp. at 70-71 (internal citations omitted); see also Hensley, 461 U.S. at 436, 103 S.Ct. at 1941 ("The most critical factor is the degree of success obtained"). The proportionality of the fee award to the damages award cannot serve as the sole factor for determining allowable fees in civil rights cases. Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005). "Congress enacted fee-shifting in civil rights litigation precisely because the expected monetary recovery in many cases was too small to attract effective legal representation." Quarantino v. Tiffany & Co., 166 F.3d 422, 425-426 (2d Cir. 1999). Since recovery under the FDCPA is generally small, "[t]he same rationale [applied in civil rights cases] applies to awards of attorney's fees under the fee-shifting provisions of the FDCPA." Baruch, 2007 WL 3232090, at *6.

Therefore, given Plaintiff's success in this case, this Court's finding that $500 in statutory damages is appropriate, the strong presumption of the reasonableness of the lodestar method, and the concern with attracting effective legal representation in cases where damages are relatively low, this Court finds that $3,080 is an appropriate award for attorney's fees under the FDCPA See Kapoor, 269 F.Supp. at 411 (plaintiff received $1,000 in damages and $6,845.21 in attorney's fees and costs).

Lastly, Plaintiff also seeks $165 in costs to reimburse Paralegals, (Docket No. 10,

p. 4)[4], $350 for the Court filing fee, (Id.), and $60 for service process fees. Id. This Court finds that these additional costs are recoverable because they are "incidental and necessary to the litigation." Tips Exports, Inc., v. Music Mahal, Inc., 01-CV-5412, 2007 WL 952036, at *11 (E.D.N.Y. Mar. 27, 2007).

Accordingly, this Court accepts Plaintiff's request for $3,665, which is a result of reasonable attorney's fees and necessary costs.

## IV.  CONCLUSION

For the reasons discussed above, this Court will grant Plaintiff's Application for Default Judgment and Plaintiff's Motion for Damages and Attorney's Fees and Costs. Plaintiff is awarded $500 in statutory damages and $3,665 in attorney's fees and costs.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion for Default Judgment (Docket No. 5) is GRANTED.

FURTHER, that Plaintiff's Motion for Damages and Attorney's Fees and Costs (Docket No.5) is GRANTED.

FURTHER, that Plaintiff is awarded $500.00 in damages and $3,665.00 in attorney's fees and costs.

FURTHER, that the Clerk of the Court is directed to enter judgment in Plaintiff's favor for a total amount of $4,165.00.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to

---

[4] This figure is also supported by the Zabranskey Affidavit, ¶ 2, Docket No. 10. Moreover, this Court finds that a paralegal rate of $50 per hour is reasonable. See Bartosik v. Credit Bureau of Rochester, Inc., 05-CV-318, Docket Nos. 16 and 17 (W.D.N.Y. Mar. 31, 2006).

close this case.

       SO ORDERED.

Dated:   January 31, 2009
          Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge